# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| SANDRA HUNTER, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>ELANCO ANIMAL HEALTH INCORPORATED, JEFFREY N. SIMMONS, and TODD S. YOUNG,<br><br>                    Defendants. | Case No. 1:20-cv-1460<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sandra Hunter ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Elanco Animal Health Incorporated ("Elanco" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Elanco; and (c) review of other publicly available information concerning Elanco.

## NATURE OF THE ACTION AND OVERVIEW

1.  This is a class action on behalf of persons and entities that purchased or otherwise acquired Elanco securities between January 10, 2020 and May 6, 2020, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.  Elanco is an animal health company that develops, manufactures, and markets products for companion and food animals. Its four primary categories are: Companion Animal Disease Prevention ("CA Disease Prevention"), which offers parasiticides that protect pets from worms, fleas and ticks; Companion Animal Therapeutics ("CA Therapeutics"), which offers treatments for pain, osteoarthritis, otitis, as well as cardiovascular and dermatology indications; Food Animal Future Protein & Health ("FA Future Protein & Health"), which includes vaccines, nutritional enzymes, and antibiotics; and Food Animal Ruminants & Swine ("FA Ruminants & Swine"), which develops food animal products used extensively in ruminant and swine production.

3.  On May 7, 2020, before the market opened, Elanco announced its first quarter 2020 financial results, reporting revenue of $657.7 million and earnings per share of -$0.12, reflecting "a reduction of approximately $60 million in channel inventory." The Company's Chief Executive Officer attributed the disappointing results to "distributor performance," among

other things, and stated that Elanco planned "to tighten [its] approach across many facets of [its] distributor relationships."

4. On this news, the Company's share price fell $3.05, or over 13%, to close at $19.88 per share on May 7, 2020, on unusually heavy trading volume.

5. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that, after consolidating its distributors from eight to four, the Company increased the amount of inventory, including companion animal products, held by each distributor; (2) that Elanco's distributors were not experiencing sufficient demand to sell through the inventory; (3) that, as a result, the Company's revenue was reasonably likely to decline; (4) that, as a result of the foregoing, Elanco would reduce its channel inventory with respect to companion animal products; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information,

occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11. Plaintiff Sandra Hunter, as set forth in the accompanying certification, incorporated by reference herein, purchased Elanco securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. Defendant Elanco is incorporated under the laws of Indiana with its principal executive offices located in Greenfield, Indiana. Elanco's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "ELAN."

13. Defendant Jeffrey N. Simmons ("Simmons") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14. Defendant Todd S. Young ("Young") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15. Defendants Simmons and Young (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from,

the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16. Elanco is an animal health company that develops, manufactures, and markets products for companion and food animals. Its four primary categories are: Companion Animal Disease Prevention ("CA Disease Prevention"), which offers parasiticides that protect pets from worms, fleas and ticks; Companion Animal Therapeutics ("CA Therapeutics"), which offers treatments for pain, osteoarthritis, otitis, as well as cardiovascular and dermatology indications; Food Animal Future Protein & Health ("FA Future Protein & Health"), which includes vaccines, nutritional enzymes, and antibiotics; and Food Animal Ruminants & Swine ("FA Ruminants & Swine"), which develops food animal products used extensively in ruminant and swine production.

### Materially False and Misleading Statements Issued During the Class Period

17. The Class Period begins on January 10, 2020. On that day, Elanco announced its 2020 financial guidance in a press release that stated, in relevant part:

- 2020 revenue is expected to be between $3.05 billion and $3.11 billion.
- Earnings per share (EPS) for 2020 are expected to be in the range of $0.04 to $0.16 on a reported basis and $1.09 to $1.16 on an adjusted basis.
- China regulatory clearance received for acquisition of Bayer AG's animal health business. Additional antitrust discussions progressing as expected.

GREENFIELD, Ind.--(BUSINESS WIRE)-- Elanco Animal Health Incorporated (NYSE: ELAN) today announced its initial financial guidance for 2020, including total revenue expectations in the range of $3.05 billion to $3.11 billion, and Core Revenue, which excludes strategic exits, in the range of $3.00 billion to $3.06 billion. Elanco also expects earnings per share (EPS) for 2020 to be in the range of $0.04 to $0.16 on a reported basis and $1.09 to $1.16 on an adjusted basis. These revenue and EPS expectations are for stand-alone Elanco only, including full year revenues for products that may be divested, and do not include any expected revenues from the Bayer animal health business or impact of

transactions related to the acquisition, such as potential issuance of additional shares.

18. On February 19, 2020, Elanco announced its fourth quarter and full year 2019 financial results in a press release that stated, in relevant part:

- Fourth quarter 2019 earnings per share (EPS) was $(0.03) (reported), or $0.23 (adjusted). Full year 2019 EPS was $0.18 (reported), or $1.06 (adjusted).
- Fourth quarter 2019 gross margin was 47.9 percent of revenue (reported and adjusted). Full year 2019 gross margin was 52.1 percent of revenue (reported and adjusted), an improvement of 340 basis points on a reported basis and 220 basis points on an adjusted basis.
- Fourth quarter 2019 Total Revenue was $787.0 million, a decline of 2 percent, while Core Revenue was flat; on a constant currency basis, Total Revenue declined 1 percent and Core Revenue grew 1 percent. Full year 2019 Total Revenue was $3.1 billion, flat compared to 2018, while Core Revenue grew 1 percent; on a constant currency basis, Total Revenue grew 2 percent and Core Revenue 3 percent.

* * *

- Confirmed financial guidance for the full year 2020, with total revenue in the range of $3.05 billion - $3.11 billion, Core Revenue in the range of $3.00 billion - $3.06 billion, and EPS in the range of $0.04 - $0.16 (reported), or $1.09 to $1.16 (adjusted). Guidance does not contemplate contributions from Bayer animal health or additional financing elements.

19. On February 28, 2020, Elanco filed its annual report on Form 10-K for the period ended December 31, 2019, affirming the previously reported financial results. Therein, the Company stated, regarding channel inventory for companion animal products[1]:

> ***For our companion animal products, increased use of alternative distribution channels, or changes within existing distribution channels, could negatively impact our market share, margins and distribution of our products.***
>
> In most markets, pet owners typically purchase their animal health products directly from veterinarians. However, pet owners increasingly have the option to purchase animal health products from sources other than veterinarians, such as online retailers, "big-box" retail stores or other over-the-counter distribution channels. This trend has been demonstrated by the significant shift away from the veterinarian distribution channel in the sale of flea and tick products in recent

---

[1] Unless otherwise stated, any emphasis herein is added.

years. Pet owners also could decrease their reliance on, and visits to, veterinarians as they rely more on internet-based animal health information. Because we market our companion animal prescription products primarily through the veterinarian distribution channel, any decrease in visits to veterinarians by pet owners could reduce our market share for such products and materially adversely affect our business, financial condition and results of operations. In addition, pet owners may substitute human health products for animal health products if human health products are deemed to be lower-cost alternatives.

Legislation has also been proposed in the U.S., and may be proposed in the U.S. or abroad in the future, that could impact the distribution channels for our companion animal products. . . .

Over time, these and other competitive conditions may increase our use of online retailers, "big-box" retail stores or other over-the-counter distribution channels to sell our companion animal products. We may not be adequately prepared or able to distribute our companion animal products if an increased portion of our sales occur through these channels. Also, we may realize lower margins on sales through these distribution channels than we do on sales through veterinarians. Any of these events could materially adversely affect our business, financial condition and results of operations.

In addition, if one or more of our companion animal distributors discontinues or modifies their relationship with us, our business, financial condition and results of operations may be materially adversely affected. For example, in 2017, a change in our U.S. inventory management practices resulted in a revenue lag as existing inventory was sold down, which management estimates decreased our revenue by approximately $35 million.

20. On March 24, 2020, the Company issued a press release entitled "Elanco Provides Business Update Related to COVID-19," stating in relevant part:

Simmons continued, "I remain confident in Elanco's long-term strategy and our ability to deliver on the commitments to our stakeholders. The underlying industry fundamentals remain strong and the diversity of the global Elanco business across farm animals and pets provides durability and balance. We are resolute in our acquisition of Bayer AG's animal health business as it adds to our leadership position in animal health for the long-term."

As the situation around the COVID-19 pandemic is rapidly evolving, ***Elanco is withdrawing its previously announced 2020 revenue and earnings per share guidance.*** Elanco is monitoring several global dynamics, from changing foreign currency rates and a dynamic animal protein market to declining veterinary clinic visits, the growing use of direct-to-consumer shipping, and sales through ecommerce and other alternative channels. The company is confident in its working capital and liquidity levels, while continuing to actively monitor the

changing environment across the world. Elanco will provide an update on its Q1 earnings call in early May, based on information available at that time.

The Elanco team remains focused and in execution mode, even as much of the employee base moves to remote working. *The manufacturing plants and R&D labs are operational, and the company is closely monitoring distribution logistics. At this time, Elanco has not experienced any supply disruption and critical projects in the pipeline continue to advance.* The U.S. Department of Homeland Security and most other countries globally have deemed manufacturing and distribution of animal medicines as essential critical infrastructure and workforce. However, in an effort to support public health and slow the spread of the disease, Elanco moved its non-business critical work force to remote working globally, with the exception of China, which has begun to return to work. Elanco also removed sales representatives from the field in many countries, including the U.S. along with its companion animal distribution partners. However, the Elanco team continues to collaborate with customers via webinars, teleconference and video conferences and other remote options.

21. The above statements identified in ¶¶ 17-20 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that, after consolidating its distributors from eight to four, the Company increased the amount of inventory, including companion animal products, held by each distributor; (2) that Elanco's distributors were not experiencing sufficient demand to sell through the inventory; (3) that, as a result, the Company's revenue was reasonably likely to decline; (4) that, as a result of the foregoing, Elanco would reduce its channel inventory with respect to companion animal products; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

22. On May 7, 2020, Elanco announced its first quarter 2020 financial results in a press release, reporting revenue of $657.7 million and earnings per share of -$0.12. According to the Company, revenue declined "9 percent due to a reduction of approximately $60 million in channel inventory driven by factors resulting from the COVID-19 pandemic." Defendant Simmons attributed the disappointing results to "distributor performance," among other things, and stated that Elanco planned "to tighten [its] approach across many facets of [its] distributor

relationships." Specifically, the press release stated, in relevant part:

- Total Revenue was $657.7 million, a decrease of 10 percent. On a constant currency basis, Total Revenue declined 9 percent due to a reduction of approximately $60 million in channel inventory driven by factors resulting from the COVID-19 pandemic.
- Gross margin was 49.4 percent of revenue (reported), or 50.1 percent of revenue (adjusted).
- Earnings per share (EPS) was $(0.12) (reported), or $0.13 (adjusted).
- Bayer Animal Health acquisition remains on track for mid-year close; Antitrust approval process progressing; new members of expanded executive leadership team announced.
- Long-term industry fundamentals remain intact; 2020 guidance withdrawn due to uncertainty of the duration and magnitude of impacts from the COVID-19 pandemic.

\* \* \*

"In the first quarter, the COVID-19 pandemic created working capital pressures across our commercial value chain and dampened assumptions about near-term demand from end users of our products. *These factors coupled with our recent evaluation of distributor performance has prompted us to tighten our approach across many facets of our distributor relationships*. Our relationship with our commercial partners has evolved significantly over the last 13 years and while distribution will continue to play a role in the future, our analysis shows our internal demand generation efforts are superior to distributors and higher inventory levels are not driving demand as it had in the past," said Jeff Simmons, president and chief executive officer at Elanco. "*In the first quarter, we made initial progress to meaningfully reduce channel inventory, primarily in our U.S. companion animal business, and we expect to further tighten channel inventory across all business areas, primarily in the second quarter. The decrease in channel inventory is a structural change that will improve our working capital and maximize our operational flexibility in the current environment and beyond.* While the actions we are taking with our commercial partners negatively impact our reported sales performance in the near term, these changes will strengthen our position, optimize our promotional approach and enable us to direct investment to the internal commercial activities that drive demand for our products over the long term."

23.     The same day, the Company held a conference call to discuss the financial results with analysts and investors. During the call, defendant Simmons noted that the Company expected additional inventory reductions and explained:

Recall at the start of 2020, we consolidated our U.S. Companion Animal distributors from eight to 4, and we instituted specific targets for them to generate

end-customer demand. I also personally established a monthly review meeting with each of them. . . . As the Elanco demand creation was increasing, we were seeing less impact directly by distributors in today's environment. Furthermore, the volume of product being held by distributors was not impacting their ability to create demand. This is an insight and a change from our historical experience. ***The COVID pandemic also impacted the inventory shift from our distributor consolidation. We expected the four remaining distributors would need to increase their inventory levels to handle the larger volume going through their operations, offsetting the inventory drawdown in the eliminated distributors.*** With the liquidity and working capital pressure from COVID, the distributors are managing their inventory more tightly. Consequently, in Q1, we reduced the amount of product and distributor inventory by approximately $60 million, mainly in the U.S. companion animal space. And we expect to further reduce an additional $80 million to $100 million, mainly in the second quarter, as we apply these new tactics across our business and geographies.

24.     On this news, the Company's share price fell $3.05, or over 13%, to close at $19.88 per share on May 7, 2020, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Elanco securities between January 10, 2020 and May 6, 2020, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

26.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Elanco's common shares actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Elanco common stock were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Elanco or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that

customarily used in securities class actions.

27. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Elanco; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

31. The market for Elanco's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Elanco's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Elanco's securities

relying upon the integrity of the market price of the Company's securities and market information relating to Elanco, and have been damaged thereby.

33. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Elanco's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Elanco's business, operations, and prospects as alleged herein.

33. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Elanco's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

34. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

35. During the Class Period, Plaintiff and the Class purchased Elanco's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed,

causing investors' losses.

## SCIENTER ALLEGATIONS

36. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Elanco, their control over, and/or receipt and/or modification of Elanco's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Elanco, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

37. The market for Elanco's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Elanco's securities traded at artificially inflated prices during the Class Period.  On January 23, 2020, the Company's share price closed at a Class Period high of $32.25 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Elanco's securities and market information relating to Elanco, and have been damaged thereby.

38. During the Class Period, the artificial inflation of Elanco's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Elanco's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Elanco and its

business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

39. At all relevant times, the market for Elanco's securities was an efficient market for the following reasons, among others:

(a) Elanco shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Elanco filed periodic public reports with the SEC and/or the NYSE;

(c) Elanco regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Elanco was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

40. As a result of the foregoing, the market for Elanco's securities promptly digested current information regarding Elanco from all publicly available sources and reflected such information in Elanco's share price. Under these circumstances, all purchasers of Elanco's securities during the Class Period suffered similar injury through their purchase of Elanco's securities at artificially inflated prices and a presumption of reliance applies.

41. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

42. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Elanco who knew that the statement was false when made.

### FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

43. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

44. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Elanco's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

45. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Elanco's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Elanco's financial well-being and prospects, as specified herein.

47. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Elanco's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state

material facts necessary in order to make the statements made about Elanco and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

48. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

49. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Elanco's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover

whether those statements were false or misleading.

50. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Elanco's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Elanco's securities during the Class Period at artificially high prices and were damaged thereby.

51. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Elanco was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Elanco securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

52. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

54. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55. Individual Defendants acted as controlling persons of Elanco within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57. As set forth above, Elanco and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class

members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

    (c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

    (d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 20, 2020

By: *Offer Korin*
**KATZ KORIN CUNNINGHAM**
Offer Korin
The Emelie Building
334 North Senate Avenue
Indianapolis, IN 46204
Telephone: (317) 464-1100
Facsimile: (317) 464-1111
okorin@kkclegal.com

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay *(Pro Hac Vice to be filed)*
Charles H. Linehan *(Pro Hac Vice to be filed)*
Pavithra Rajesh *(Pro Hac Vice to be filed)*
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz *(Pro Hac Vice to be filed)*
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Attorneys for Plaintiff Sandra Hunter*